```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

JOHN-BAPTIST SEKUMADE,          §
                                §
        Plaintiff,              §
                                §
v.                              §    ACTION NO. 4:10-CV-3604
                                §
JUDGE JOHN ELLISOR and          §
JANICE NEUMANN, in their        §
individual capacities,          §
                                §
        Defendants.             §
                                §
```

### MEMORANDUM OPINION

Pending before the court[1] is Defendant Judge John Ellisor's Motion to Dismiss (Docket Entry No. 4) and Defendant Janice Neumann's Motion to Dismiss (Docket Entry No. 11).

The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant Judge John Ellisor's Motion to Dismiss (Docket Entry No. 4) and **GRANTS** Defendant Janice Neumann's Motion to Dismiss (Docket Entry No. 11).

### I.  Case Background

Plaintiff John-Baptist Sekumade ("Plaintiff"), a pro se attorney, initiated this action against Defendant Judge John Ellisor ("Judge Ellisor") and Judge Ellisor's court clerk Defendant Janice Neumann ("Ms. Neumann") (collectively, "Defendants") on

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 20, 23, 24.

October 5, 2010.[2] He requests money damages for violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983 ("Section 1983").[3]

According to Plaintiff's complaint, this federal case ("Federal Suit") stems from alleged actions and omissions by Judge Ellisor and Ms. Neumann in connection with a case brought against Plaintiff and his wife in state court ("State Suit").[4] In the State Suit, Plaintiff filed various motions, including a motion for default judgment, a motion to non-suit his counter-claim, two motions to transfer venue, and a motion to compel arbitration.[5]

With respect to the motion for default judgment and motion to non-suit his counter-claim, Plaintiff states that Judge Ellisor had not ruled on them as of the filing date of the Federal Suit.[6]

Plaintiff states that he filed the motion to transfer venue in the State Suit because he lived in Brazoria County and because the underlying contract at issue in the suit was signed in Harris County, yet the plaintiff there chose to bring suit against him in

---

[2] Docket Entry No. 1, Complaint, ¶ 1.

[3] Id.

[4] Id. ¶¶ 14-15. The state court lawsuit is Case No. 09-CV-1019 in the 122nd Judicial District Court of Galveston County. Id. ¶¶ 1, 14.

[5] Id. ¶¶ 2, 4-5, 14. Plaintiff states that he filed the latter two motions "before August." Id. ¶ 16.

[6] Id. ¶ 16.

Galveston County.[7]  Plaintiff states that Judge Ellisor did not rule on the motion, although, at the hearing on the motion, the judge told Plaintiff that, since he had filed a counter-suit, he had "effectively forfeited his right to challenge venue."[8]  Plaintiff says that he had to file a second motion to transfer venue "before he could finally get [the] case heard on submission."[9]  Plaintiff states that the State Suit plaintiff responded to the motion "a few days before date of submission" and did not submit its evidence until the morning of the hearing.[10]  He said that Judge Ellisor finally ruled on the motion "over a month after it was set for submission," denying Plaintiff's request.[11]

With respect to Plaintiff's motion to compel arbitration,[12] Ms. Neumann informed Plaintiff on September 22, 2010:[13] "There is not a hearing date available next week, or for that matter, in the near future."[14]

---

[7]   Id.

[8]   Id.

[9]   Id. ¶ 4.

[10]  Id. ¶ 16.  Plaintiff states that these actions were contrary to Texas Rule of Civil Procedure 87(a).  Id.

[11]  Id. ¶ 16-17.

[12]  Plaintiff states that there was an arbitration clause in the underlying contract.  Id. ¶ 14.

[13]  Plaintiff states that he filed the motion on or around this same date.  Id.

[14]  Id. ¶¶ 2, 10, 15.  With her motion to dismiss, Ms. Neumann files a copy of the relevant e-mails sent between herself and Plaintiff.  Docket Entry No. 11-1, Affidavit of Ms. Neumann, p. 4.  Plaintiff wrote: "I plan to file a

Plaintiff states that the plaintiff in the State Suit promptly received court dates and rulings on all of its motions.[15] He also states more specifically that Judge Ellisor ruled on the State Suit plaintiff's motion to compel and motion for sanctions.[16] In making those rulings, Judge Ellisor ordered sanctions against Plaintiff, consisting of either paying $3,000 in attorney's fees within forty-five days and performing forty hours of community service, or, alternatively, paying $13,000.[17]

Some time after this ruling, the State Suit plaintiff's secretary called Plaintiff and demanded payment of $13,000, stating that she was acting at the instruction of the court; she said that she was sending someone to Plaintiff's office to collect the judgment.[18] Plaintiff contacted Judge Ellisor's secretary to ask if the judge had indeed ordered the State Suit plaintiff to do this, but Plaintiff says that he never received a response from the court.[19]

---

motion to enforce arbitration in the above mentioned cause today.  I would like to know if I can get a hearing date next week for my hearing.  If I can know when to call so I can get a date, I should have filed by noon [sic].  Thank you." Id. Three hours late, Ms. Neumann responded: "No, there is not a hearing date available next week or for that matter anytime in the near future.  You must file your motion accompanied by a blank notice of hearing/submission with the District Clerk's office and I will set it once it is received.  Thank you."   Id.

[15]   Docket Entry No. 1, Complaint, ¶¶ 5, 16-17.

[16]   Id. ¶ 5.  Plaintiff does not say when the motions were filed or ruled upon.

[17]   Id. ¶ 6.

[18]   Id. ¶ 8.

[19]   Id. ¶ 9.

4

Before filing the Federal Suit, Plaintiff contacted Ms. Neumann again to request clarification of her e-mail from September 22, 2010.[20] He asked her whether her statements therein were made on behalf of herself or on behalf of Judge Ellisor, but she never responded to his query.[21]

As a result of the alleged acts and omissions by Defendants, Plaintiff states that his Fourth Amendment right to be free from unreasonable search and seizure of his property and his Fourteenth Amendment right to equal protection[22] were violated in the amount of $35,000, the subject matter of the State Suit, plus attorney's fees.[23] He also requests damages for pain, suffering, and emotional trauma, which he alleges required "the expenditure of money for treatment."[24]

## II. Legal Standards

When a 12(b)(1) motion is made in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). Defendants here

---

[20] Id. ¶ 10.

[21] Id. ¶ 11.

[22] I.e., his inability to adequately defend himself because Ms. Neumann, "most likely on behalf of Judge [Ellisor,] refused to allow Plaintiff to file a Motion to Compel Arbitration." Id. ¶ 19(b).

[23] Id. ¶ 18(a).

[24] Id. ¶ 18(b). Plaintiff also states that this court has jurisdiction over his "claims arising under state law," but no actual state law claims are made anywhere in the complaint. See id. ¶ 1.

raise judicial immunity, which is immunity from suit and not just immunity from the ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991).

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).

The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919. A district court has original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, its jurisdiction over such actions is limited to actual cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).

The plaintiff has the burden of proving subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) by a preponderance of the evidence. New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008). The court may decide whether to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id.

The court, in determining whether it is properly vested with subject matter jurisdiction, must take as true all uncontroverted factual allegations in the complaint. John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000). With contradictory evidence, however, the court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

### III. Analysis

**A.  Judge Ellisor**

Judge Ellisor raises absolute judicial immunity in favor of dismissal of all claims against him. Generally, a judge has absolute immunity from suits for damages. Mireles, 502 U.S. at 9-10. Judicial immunity can only be overcome under two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity[,]" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 11. Judicial immunity cannot be overcome by allegations of bad faith or malice. Id.

In determining whether a judge is entitled to absolute immunity for a particular act, the court must draw a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." Forrester v. White, 484 U.S. 219, 227 (1988). Administrative decisions have not been regarded as judicial acts, even if they are "essential to the very functioning of the courts." Id. at 228. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Mireles, 502 U.S. at 12. "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words [a court should] look to the particular act's relation to a general function normally performed by a judge . . . ." Id. at 13.

The Fifth Circuit has adopted a four-factor test for determining whether a judge's actions are judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. Davis v. Tarrant County, Tex.,

565 F.3d 214, 222 (5th Cir. 2009) (citing Ballard v. Wall, 413 F.3d 510, 515 (5th Cir. 2005)). "These factors are broadly construed in favor of immunity." Id. (citing Maline v. Gonzales, 994 F.2d 1121, 1125 (5th Cir. 1993)).

In the present case, Plaintiff clearly complains of actions taken by Judge Ellisor in his judicial capacity. Plaintiff has alleged no action taken by Judge Ellisor outside of his official capacity as a judge. In fact, the primary allegations against Judge Ellisor are that he has failed to rule on some of Plaintiff's motions while ruling on all of the State Suit plaintiff's motions; that he improperly decided a motion to transfer venue; and that he has failed to return Plaintiff's phone calls—all of which are in the context of an on-going lawsuit.

Applying the four-factor test for determining whether the judge's actions and/or omissions were judicial in nature, (1) the acts concern normal judicial functions, i.e., ruling on motions, deciding when to rule on motions, setting motions for hearings, and communicating with counsel; (2) the acts occurred in or around the courtroom; (3) the acts arose out of a proceeding before Judge Ellisor's court; and (4) the acts stemmed from appearances before Judge Ellisor in his official capacity. See Davis, 565 F.3d at 222. Thus, taking Plaintiff's allegations against Judge Ellisor as true, his suit against Judge Ellisor is barred. See Stump v. Sparkman, 435 U.S. 349, 355-60 (1978) (holding that a judge is

9

entitled to judicial immunity where his actions were alleged to have deprived litigant of due process); Rheuark v. Shaw, 628 F. 2d 297, 303-04 (5th Cir. 1980) (holding that a judge is entitled to judicial immunity even if his actions deprived criminal defendant of due process).

Furthermore, in contrast to the executive officers whose Eleventh Amendment immunity Congress abrogated in some circumstances under Section 1983 (pursuant to Section 5 of the Fourteenth Amendment), "judges carrying out their judicial functions" enjoy "absolute immunity . . . for their official actions." Hafer v. Melo, 502 U.S. 21, 29 (1991).

Accordingly, Plaintiff's claims against Judge Ellisor are barred by judicial immunity, and the court **GRANTS** Judge Ellisor's motion to dismiss.

**B.   Ms. Neumann**

Ms. Neumann raises derived judicial immunity in favor of dismissal of all claims against her. Court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." Clay v. Allen, 242 F.3d 679, 682 (5th Cir. 2001) (quoting Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981)). This includes "damages for civil rights violations when they perform tasks integral to the judicial process." Evans v. Suter, 260 Fed. App'x 726 (5th Cir. Dec. 28, 2007)(unpublished).

The setting of hearing dates is clearly integral to the judicial process, and as such, Ms. Neumann derives absolute judicial immunity for her act.  See Clay, 242 F.3d at 682. Furthermore, Plaintiff has alleged no action by Ms. Neumann taken outside of her duties as an arm of the court.

Accordingly, the court **GRANTS** Ms. Neumann's motion to dismiss.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendants motions to dismiss.

**SIGNED** in Houston, Texas, this <u>1st</u> day of March, 2011.

Nancy K. Johnson
United States Magistrate Judge